## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**FRANTISEK PRIBYL**

    **Plaintiff,**

**vs.**                          **CASE NO. 4:18-CV-00349-WS-MAF**

**R.E. COIL,**
**Warden, FDC Tallahassee,**
**et al.,**

    **Defendant.**
_____/

## <u>CORRECTED REPORT AND RECOMMENDATION</u>

Plaintiff, Frantisek Pribyl, an inmate proceeding *pro se* and *in forma pauperis*, initiated this civil rights action pursuant to <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971),[1] nearly three years ago as a pretrial detainee at the Federal Detention Center (FDC) Tallahassee.[2] ECF Nos. 1, 23. The second amended complaint, ECF No. 38, was served upon Defendant Arnold. ECF No. 62. The summonses for Defendants Williams, Pritt, and Coil were returned unexecuted because they are no longer employed at the FDC. ECF No. 63-65. Further service orders were deferred

---

[1] The original Report contained a scrivener's error incorrectly citing to 42 U.S.C. § 1983. <u>Bivens</u> is the proper citation as the federal equivalent of Section 1983.

[2] Pribyl is currently housed at FDC Williamsburg located in South Carolina. He has been transferred several times.

until a determination could be made concerning the exhaustion requirement of 42 U.S.C. § 1997e(a), raised by Defendant Arnold. ECF No. 68. Defendant Arnold's motion to dismiss asserts failure to exhaust administrative remedies as an affirmative defense. ECF No. 69.

After careful review, for the reasons stated, the motion to dismiss should be DENIED; and certain claims against Defendants Arnold, Williams, Pritt, and Coil should PROCEED. Other claims require dismissal; and the requests for injunctive- and habeas relief are due to be denied.

## I. Pribyl's Second Amended Complaint, ECF No. 38

Pribyl's operative complaint names several employees of FDC Tallahassee: R.E. Coil, Warden; "Pritt," a unit manager; D. Arnold, "counsel,"; Mrs. Williams, a correctional officer; and two "John Doe" "correctional officers." ECF No. 38, pp. 2-3, 14. The operative complaint is somewhat disjointed and raises a litany of claims not limited to a particular defendant, correctional institution, or issue.[3] The Court is not unsympathetic to *pro se* litigants and acknowledges that English is not Pribyl's first

---

[3] This Report cites to filings in the criminal case as "CR-ECF No. ___" and to filings in the instant civil case as "CV-ECF No. ____." Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of Pribyl's criminal proceeding N.D. Fla. Case No. 4:17-CR-00015-MW-MAF. The criminal case was initiated on February 13, 2017. CR-ECF No. 1. On May 23, 2018, Defendant was convicted following a jury trial. CR-ECF No. 130. On October 5, 2018, Pribyl was sentenced to 120 months in prison followed by a ten-year term of supervised released. CR-ECF No. 214.

language. See ECF No. 81. *Pro se* litigants are entitled to liberal construction pursuant to Haines v. Kerner, 404 U.S. 519, 520 (1972).

### A. Denial of Medical Care at Correctional Facilities

Pribyl alleges that abuses occurred between February 11, 2017, and November 1, 2018. ECF No. 38. Pribyl faced several health issues fractured bones, infections, hundreds of skin sores, a severe staph infection, and issues with his teeth. ECF No. 38, p. 15. It is unclear which conditions began while Pribyl was housed at FDC Miami. Id. Pribyl alleges he filed numerous complaints and requests seeking medical care (verbal, "cop outs", and "emails") and all were ignored by officials. Id. Pribyl claims that the "John Doe" doctor at FDC Miami failed to provide him sufficient medication to treat his skin infection because the infection came back within two weeks. Id. At FCI Ashland, a "John Doe" doctor promised to conduct blood work but never did so. Id. As a result, Pribyl's skin sores continued to spread throughout his body; and he only received ibuprofen, which did not help the pain. Id., p. 16-17. Pribyl describes these sores in graphic detail. Id., p. 16.

From January through May 2018, Pribyl continued to complain about his medical conditions and filed several requests to the warden, a doctor, and Defendant Arnold but was repeatedly ignored. Id., p. 16. Finally, Officer Trawick made an emergency call to Lieutenant Taylor who took photographs

of Pribyl's condition. Id. After Lieutenant Taylor's action, Pribyl was due to have surgery. Id., p. 17. Pribyl claims they took samples of the infection, sent it to a laboratory, and confirmed it was a staph infection. Id. Pribyl's trial was held May 21 through May 23, 2018. Id. Pribyl claims he was unable to properly assist in his defense because of the severity of his condition. Id. Pribyl alleges the denial of medical care has continued through the present. Id. He still has sores under his hair on his head. Id. However, Pribyl provides no set of facts nor any defendant relating to his present care or lack thereof.

### B. Pribyl Alleges Unconstitutional Conditions of Confinement, First Amendment Claims, and Retaliation.

Pribyl claims that he was taken to the Special Housing Unit (SHU) unit on July 10, 2018, at 8:00 p.m., after being "wrongfully accused" and remained there until July 28, 2018. Id., p. 5. Pribyl claims that Defendant Arnold placed him into the SHU to punish, harass, humiliate, and discriminate against him. Id. Pribyl alleges Defendant Williams purposefully shut off the water supply in the SHU from July 11 through July 16. Id., p. 5. Pribyl could not flush the toilet, shower, or drink water. Id., p. 6. Pribyl claims the denied access to water and the smell from the toilet amounted to physical and psychological torture, which required the administration of psychiatric medications. Id., pp. 5-6. Pribyl complained, but Defendant Williams sought assistance in ensuring the water remained off. Id., p. 5. Pribyl argues this

condition of confinement equaled being "denied life support . . . and [was an] attempt to kill" him. Id., p. 6.

For two days, on July 12 and July 13, Pribyl reported the situation to the unit manager, Defendant Pritt, and asked for help. Id., p. 6. Defendant Pritt only directed Pribyl to report the issue to the SHU lieutenant. Id. On the same days, Pribyl also reported the issue to Defendant Arnold who ignored him and walked away. Id., p. 6. On July 13 or July 14, Pribyl sent a letter to the warden, Defendant Coil, about the water and asked for help but was again ignored and received no response. Id. Eventually, on July 16, an unknown prison official restored Pribyl's access to water. Id.

Pribyl claims that, afterward, he was the subject of continued harassment and verbal abuse by Defendant Arnold including "constant religious attacks." Id., p. 18. Defendant Arnold told Pribyl to cover up or remove his necklace with a crucifix. Id. On multiple occasions, Defendant Arnold called the necklace, "shit" and said he never wanted to see it again. Id. Pribyl asked the prison priest for help but was told he could do nothing to stop Defendant Arnold because it would just be "cover[ed] up." Id., pp. 18-19. This left Pribyl feeling "hunted and targeted" and resulted in nightmares. Id., pp.18-19. The religious harassment continued through November 1, 2018. Id., p. 19. For example, Defendant Arnold kicked the cross, ordered

Pribyl to put it away, and regularly interrupted Pribyl during prayer "with nasty comments." Id., p. 19. Defendant Arnold threatened Pribyl stating, "I'll tell you what will happen next to you, you will go under the ground and never see the sun or your children or family [or] daughter ever again!!!" Id. Pribyl believes that these personal attacks and threats are retaliation for his complaints to Defendant Pritt about Defendant Arnold. Id. Pribyl claims that he asked other correctional officers for help or a solution but they told him to be quiet, "do not complain"; and they warned him about the "potential danger" for filing complaints against Defendant Arnold, as if they were afraid of him. Id., p. 20.

Pribyl asked for the forms to exhaust his administrative remedies beginning in June 2017 and was provided with a BP8 and 8 ½ "and that's it"; Defendant Arnold told him "there is nothing else you can do." Id. Pribyl wrote to the warden because Defendant Arnold would not stop. Id. Pribyl claims that he sought help from another inmate and sent a BP 229 but never received an answer. Id. Defendant Arnold would constantly search Pribyl's cell sometimes three times a week, or, at other times, two to three times per day, from June through September 2018. Id., p. 20-21. Defendant Arnold also threatened "I'll write you up every day from now on." Id., p. 21. Pribyl claims the harassment was harsh enough that, during August and September 2018, other inmates asked him what he did to Defendant Arnold

to get searched all the time and shared that Defendant Arnold told the inmates to "snitch[] about Pribyl." Id. After each search, Defendant Arnold and his "colleagues" would stand up in the middle of the unit and laugh at Pribyl and insulted his European ethnicity calling him "Mr. Gucci." Id. Defendant Arnold put out an order that "European Gucci" would not be allowed to "move anywhere else without his personal approval." Id. During one contraband search operation in June 2017, all inmates were relocated from Unit B to Unit D, but only Pribyl was moved to the SHU where he had to stay for one month. Id. After he was released from the SHU, Pribyl was required to report to a "CO" every two hours. Id. Pribyl believes that his medical condition was somehow a result of the psychological "torture." Id.

### C. Miscellaneous Complaints of Conditions of Confinement

Pribyl complains that in October 2018 there was a roach in his dinner plate; and although officers replaced the food, he remained unable to eat for a few days. ECF No. 38., p. 17. Pribyl questions whether the incident was intentional. Id. Pribyl claims the SHU cells have black mold but "no one care[s]." Id., p. 6. Pribyl reported the mold issue to Defendant Coil in June 2017 and in September 2018, but he was ignored. Id. Pribyl also claims that the evidence in his criminal case was fabricated. Id., 20.

### D. Relief Requested

Pribyl alleges violations of his rights under the First, Fourth, and Eighth Amendments and seeks $300,000 in damages; court fees; and injunctive relief ordering BOP to stop the cruelty and terminate Defendants' employment. Id., p. 7. Pribyl wants the Defendants to be prosecuted and sentenced to the maximum allowable punishment. Id., p. 6-7. Finally, Pribyl asks for a reduction in his sentence or release from prison. Id.

## II.     Defendant's Motion to Dismiss, ECF No. 69.

Defendant Arnold argues that Pribyl failed to exhaust his administrative remedies as mandated by the PLRA and, as such, he is entitled to dismissal. ECF No. 69. According to Defendant Arnold, Pribyl filed twenty-five administrative remedy filings but never exhausted by filing appeals through all levels of the remedy process. Id., p. 8. Defendant provides the SENTRY record, ECF No. 69-3, and a declaration from Mr. Kevin Littlejohn, from the BOP's regional office, ECF No. 69-1. According to Defendant, while housed at USP Lewisburg, Pribyl filed for administrative remedies on March 29, 2019, alleging staff misconduct at FDC Tallahassee. Id., p. 8-9. The request was rejected because Pribyl did not submit a remedy request at FDC Tallahassee or a subsequent appeal. Id. Defendant provides the grievance log but no copies of the grievances actually filed. There are several "DHO Appeals" listed but there is no way of knowing what these appeals address

based on the log alone. ECF No. 69-3, p. 4, 7, 10, 14. The log entries are in no apparent order.

## III.    Pribyl's Reply, ECF No. 91

The Court liberally construes Plaintiff's "Objection," ECF No. 91, as a reply to Defendant's motion to dismiss. Pribyl maintains that he properly and timely submitted administrative remedies addressing the issues which he raised in his operative complaint. ECF No. 91, p. 1. Pribyl insists that he did everything that was "available . . . [and] possible." Id. In return for filing the initial administrative remedies, Pribyl repeats his allegation that he was subjected to punishment. Id. Pribyl also claims that he is unable to provide evidence of his grievances and letters because his legal work and papers were confiscated during transfers and lockdowns and were never returned to him. Id., p. 2. Plaintiff seeks an evidentiary hearing on the matter. Id. As a preliminary matter, the Court finds that an evidentiary hearing on the matter of exhaustion is not necessary. The Court is required to accept Plaintiff's allegations in the operative complaint as true.

## IV.    Standard of Review

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the "complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Although legal conclusions can provide the framework of the complaint, they must be supported by factual allegations. Id. at 679. Detailed factual allegations are not required, but the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." Twombly, 550 U.S. at 555 (citation omitted). The factual allegations must adequately "raise a right to relief above the speculative level." Id. (citations omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by* Mohamad v. Palestinian Auth., 566 U.S. 449 (2012).

When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. See Brooks v. Blue Cross & Blue Shield of Fla.,

Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (citing SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988)).

The PLRA requires a prisoner to exhaust his administrative remedies before filing a civil rights action. 42 U.S.C. § 1997(e); Porter v. Nussle, 534 U.S. 516, 524 (2002); Gould v. Owens, 383 F. App'x 863 (11th Cir. 2010). There is no discretion to waive this requirement. Id. The PLRA requires proper exhaustion in compliance with the procedural rules and deadlines of an institution's grievance system. Woodford v. Ngo, 548 U.S. 81 (2006). The exhaustion requirement "reduces the quantity and improve[s] the quality of prisoner suits" and affords prison officials the opportunity to address complaints internally before a Section 1983 case is filed. Porter, 534 U.S. at 525. This includes the filling of an appeal. Even if an appeal were futile, the requirement cannot be waived. Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

The issue of whether a prisoner failed "to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). Such a "defense is treated 'like a defense for lack of jurisdiction,' although it is not a jurisdictional matter." Id. It is "not generally an adjudication on the merits." Id.

Ruling on a "motion to dismiss for failure to exhaust administrative remedies is a two-step process." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008) (citation omitted). "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." Id. (citing to Bryant, 530 F.3d at 1373-74).

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082 (citing Bryant, 530 F.3d at 1373-74, 1376). The burden of proof for evaluating an exhaustion defense rests with the Defendant. Jones v. Bock, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Turner, 541 F.3d at 1082-83.

Nonetheless, "[a] remedy has to be available before it must be exhausted, and to be available a remedy must be capable of use for the accomplishment of its purpose. Remedies that rational inmates cannot be

expected to use are not capable of accomplishing their purposes, and so are not available." Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (internal citations and quotations omitted). "Under § 1997e(a), the exhaustion requirement hinges on the "availab[ility]" of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016).

## V.   Discussion

### A. Failure to Exhaust

Prisoners who do not know the grievance process are not excused from using it simply because no one affirmatively explained it to him. A process is unknown and unknowable when the prisoner exercises reasonable effort to obtain the information about the process. See Goebert v. Lee County, 510 F. 3d 1312, 1322 (11th Cir. 2007). The factual allegations in Pribyl's complaint support his claims that he made reasonable efforts to follow the processes but was thwarted in his attempts to exhaust his administrative remedies.

The BOP has a four-step administrative complaint process. First, inmates must present their informal complaints to staff; and staff are to attempt to resolve the matter. 28 C.F.R. § 542.13(a). Second, if informal resolution is unsuccessful, the inmate is to file a BP-9 form to the warden

within 20 calendar days after the date on which the basis of the request occurred. 28 C.F.R. § 542.14(a). The warden must respond to the complaint within 20 calendar days. 28 C.F.R. § 542.18. Third, if the inmate is dissatisfied with the warden's response, he may file an appeal using a BP-10 form to the Regional Director within 20 calendar days of the warden's response. 28 C.F.R. § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, he can file an appeal on a BP-11 form to the general counsel at the BOP's Central Office within 30 days of the date of the Regional Director's response. 28 C.F.R. § 542.15(a).

Here, Pribyl made numerous informal attempts both orally and by writing letters to present his complaints to each of the Defendants and other prison officials. When Pribyl asked for the forms to file a grievance, he was provided with the wrong forms. Pribyl waited for responses from the warden and never received one but was ignored. Meanwhile, the Defendants, prison officials, and even a priest told Pribyl there was nothing more he could do, ignored him, or, alternatively, threatened and intimidated him. It cannot be said that Pribyl had meaningful access to the grievance system. Rather, Pribyl was blocked each time. It cannot be maintained that this results in dismissal for failure to exhaust administrative remedies that were unavailable to Pribyl. Accordingly, Defendant's motion to dismiss is due to be DENIED.

### B. Pribyl's Claims Challenging Conditions of Confinement and Deliberate Indifference to a Serious Medical Need.

A federal pretrial detainee challenging the conditions of his confinement in a Bivens claim must turn to the Fifth Amendment Due Process Clause for protection. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). Under Bell, to establish a basis for a violation, a prisoner must allege that his conditions of confinement amount to punishment. Id. 441 U.S. at 538. The analogous standard applicable to prisoners under the Eighth Amendment, conditions of confinement must deny a detainee "the minimal civilized measure of life's necessities." This requires that prisoners be afforded "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994). To prevail, a plaintiff must prove a (1) condition of confinement that inflicted unnecessary pain or suffering (the objective component), (2) deliberate indifference to that condition (the subjective component), and (3) causation. LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993) (citations omitted). The objective component requires a showing a condition is "extreme," "pose[s] an unreasonable risk of serious damage to his future health or safety," and that the "risk of which he complains is not one that today's society chooses to tolerate." Chandler v. Crosby, 379 F.3d 1278, 1289-90 (11th Cir. 2004) (internal citations omitted).

The subjective component requires a showing that prison officials were deliberately indifferent to a known, substantial risk of serious harm. Farmer v. Brennan, 511 U.S. at 843. To demonstrate deliberate indifference, a prison official's conduct must be "more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003). It must be a culpable state of mind to unnecessarily and wantonly inflict pain or harm to a prisoner. Wilson v. Seiter, 501 U.S. at 302-03. Finally, Pribyl must show that Defendants' "acts or omissions were the cause -- not merely a contributing factor -- of the constitutionally infirm condition" and that his injuries were proximately caused by the deliberate indifference. LaMarca, 995 F.2d at 1538-39.

Pribyl's allegations concerning the one occasion he found a roach in his food tray, which he attributes to no one, does not raise a claim of constitutional proportion that suggests any "extreme deprivations." Chandler, 379 F.3d at 1298. "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985); see also Taylor v. NaphCare, Inc., 2006 U.S. Dist. LEXIS 100596, *17 (where only occasionally insects or vermin waste was present in the prison food there was no constitutional violation).

However, Pribyl has identified a condition of confinement that might be less onerous had he been in good health – namely, the denial of access to water in the SHU for five days and an unsanitary cell, which he claims was punishment. At the time, Pribyl suffered from a severe staph infection with "hundreds" of skin sores that were extremely painful and bleeding, that would very likely become more serious, if not deadly, if he remained in such conditions. See ECF No. 38, p. 16. As narrated above, Pribyl explains that without water he was unable to maintain his personal hygiene, was relegating to using a toilet which could not be flushed, was relegated to a cell containing black mold, and detailed the deterioration of his condition. Pribyl provides sufficient facts to properly allege that Defendants Arnold, Coil, Williams, and Pritt either intentionally contributed to or consciously disregarded the conditions in the SHU that posed substantial risk to Pribyl's health and safety. See Farmer, 511 U.S. at 837. The Eighth Amendment protects against housing inmates in situations that pose a substantial risk of contracting a serious illness. Helling v. McKinney, 509 U.S. 25, 33 (1993).

Similarly, Pribyl has set forth sufficient facts to suggest that Defendants were deliberately indifferent to his serious medical need. Delayed or denied access to medical care for inmates resulting in physical or mental injury constitutes a violation of constitutional rights. Estelle v. Gamble, 429 U.S. 97,

103-05 (1976). To sufficiently state a claim, a plaintiff must allege facts that plausibly show: (1) the plaintiff had a serious medical need; (2) the defendant was deliberately indifferent to that need; and (3) there is a causal connection between that indifference and the plaintiff's injury. Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). The medical need must be "one that, if left unattended, pos[es] a substantial risk of serious harm." Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003) (citations and internal quotation marks omitted).

A deliberate-indifference claim contains both an objective and a subjective component. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the prisoner must prove the need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," which "if left unattended, poses a substantial risk of serious harm." Id. Second, the prisoner must prove the defendant had (1) subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) by conduct that is more than mere negligence. Id. citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). The subjective component requires the plaintiff to demonstrate that the prison officials acted wantonly, with

deliberate indifference to the plaintiff's serious needs. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The Eleventh Circuit instructs that, "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." Farrow v. West, 320 F.3d 1235 (11th Cir. 2003) citing Lancaster v. Monroe County, 116 F.3d 1419, 1425 (11th Cir. 1997).

On multiple occasions, Pribyl made requests to Defendant Arnold and the warden to seek medical care for his severe staph infection and was ignored. Moreover, Defendant Williams and Pritt were also on notice but ignored Pribyl's request for assistance where the conditions of the cell aggravated his condition. Accordingly, Pribyl has alleged sufficient facts at this stage related to the conditions of confinement and deliberate indifference to his medical condition, which warrant a response from Defendants Arnold, Williams, Pritt, and Coil.

## C. Pribyl's Allegations of Infringement upon Freedom of Religion and Free Speech Claims

Pribyl alleged that on numerous occasions, Defendant Arnold ridiculed him, repeatedly told him to remove his crucifix, and interrupted him when he was praying. Pribyl also alleges that Defendant Arnold continue to harass,

threaten, and intimidate him in retaliation for complaining about the conditions of his confinement.

Congress passed the Religious Land Use and Institutionalized Persons Act (RLUIPA) to provide confined persons greater protection of religious exercise than what the Constitution itself affords. Under Section 3 of RLUIPA, "no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . ., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling interest." 42 U.S.C.A. §2000cc-1(a). Section 3 of RLUIPA applies whenever "the substantial burden on religious exercise is imposed in a program or activity that receives federal financial assistance." 42 U.S.C. §2000cc-1(b)(1). In RLUIPA claims, the plaintiff must first demonstrate (1) a sincere religious belief and (2) a substantial burden on his religious activity caused by a state actor.

Liberally construing the complaint, a separate constitutional issue is Pribyl's right to file prison grievances concerning the conditions of his confinement, pursuant to the BOP's Administrative Remedy Program set forth in 28 C.F.R. §§ 542.10-19 and BOP Policy Statement 1330.18 without

retaliatory action by prison officials. The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. See Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592-93 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted). "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." Boxer X v. Harris, 437 F.3d 1107, 1112 (11th Cir. 2006). To prevail on a claim of retaliation, the inmate must establish these elements: (1) his speech was constitutionally protected; (2) the defendant's retaliatory conduct adversely affected the protected speech; and (3) there is a causal relationship between the retaliatory action and the protected speech. See Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).

At this stage of the proceedings, the Court accepts Pribyl's allegations in his sworn complaint as true. Pribyl has alleged sufficient facts which warrant a response from Defendant Arnold regarding the RLUIPA and First Amendment claims.

*D. Shotgun Pleadings*

The leniency afforded to *pro se* litigants does not permit them to file an impermissible "shotgun" pleading. The Eleventh Circuit has identified four rough types or categories of shotgun pleadings. See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (citations omitted). One common type of shotgun pleading one that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. Id. "The unifying characteristic of . . . shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Id.

As narrated above, Pribyl brings forward claims against certain "John Doe" defendants but provides no set of facts for any acts or omissions attributable to them that sufficiently state a claim. Alternatively, many of Pribyl's allegations are attributable to no particular individual(s) on any specific date(s).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550

U.S. 544, 555 (2007) (internal citations omitted). Pribyl must allege the facts which support the claim raised against each defendant. Legal conclusions are insufficient. To that end, the claims against the "John Doe" defendants should be dismissed and those parties should be terminated from the case.

   *E. Futility of Habeas Claims and <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994)*

   To the extent that Pribyl attempts to assert that any defendant is responsible for a "wrongful accusation" that resulted in a trial and sentencing or affected the outcome of his trial, Pribyl's request for habeas relief is not permissible under <u>Bivens</u>.

   A prisoner may not bring a claim for damages under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction. <u>Bivens</u> is the federal equivalent of Section 1983. "The Court's purpose was to limit the opportunities for collateral attack on [criminal] convictions because such collateral attacks undermine the finality of criminal proceedings and may create conflicting resolutions of issues." <u>Abella v. Rubino</u>, 63 F.3d 1063, 1065 (11th Cir. 1995) (internal citations omitted). Thus, unless a plaintiff can demonstrate that the conviction or sentence "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called

into question by a federal court's issuance of a writ of habeas corpus," the complaint must be dismissed. See Heck, 512 U.S. at 487.

Although, Pribyl does not indicate what the wrongful accusations were that may have led to a conviction and sentence or affected his sentence, Heck bars the inquiry on whether the accusations were valid because it could necessarily overturn the conviction. Moreover, the Court can only recognize a Bivens action if: (1) there are no adequate alternative remedies under state or federal law; and (2) no "special factors" counsel against implying a cause of action. Robles v. Kane, 550 F. App'x 784, 787 (11th Cir. 2013). Prisoners challenging the constitutionality of a federal conviction have a remedy by filling a direct appeal or as a collateral attack under 28 U.S.C. § 2255. Prisoners challenging the execution of their sentence or the validity of their detention have a remedy under 28 U.S.C. § 2241. Accordingly, Pribyl's claims for habeas relief warrant dismissal.

### F. Pribyl Does Not Have Standing to Pursue Criminal Prosecution as a Remedy.

Repeatedly, Pribyl claims that the abuse he suffered amounts to psychological and physical torture and requires criminal prosecution and application of the maximum sentence under the law. ECF No. 1, pp. 5-7. Pribyl does not cite to any criminal statute; nonetheless, Pribyl's reliance on a criminal statute to create a private right of action is misplaced. See Linda

R.S. v. Richard C., 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); see also Love v. Delta Air Lines, 310 F.3d 1347, 1352-53 (11th Cir. 2002) (stating "[c]riminal statutes generally do not provide a private cause of action"). More importantly, the decision to prosecute generally rests entirely in the prosecutor's discretion. Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). Therefore, the criminal allegations should be dismissed for lack of standing.

### G. Pribyl's Motion for Injunctive Relief against the BOP Should Be Denied.

Pribyl does not name the BOP as a defendant in this case. It is within the sound discretion of the district court to grant or deny a preliminary injunction, which will not be disturbed absent a clear abuse of discretion. Palmer v. Braun, 287 F.3d 1325, 1329 (11th Cir. 2002). See also LSSi Data Corp. v. Comcast Phone, LLC, 696 F.3d 1114, 1119 (11th Cir. 2012). The standard for issuing a preliminary injunction is the same as is required for a temporary restraining order. See California v. American Stores Co., et al., 492 U.S. 1301 (1989); Johnson v. U.S. Dep't of Agriculture, 734 F.2d 774 (11th Cir. 1984).

In order for Pribyl to be entitled to a preliminary injunction, he must show:

1. a substantial likelihood of success on the merits;

2. the order is necessary to prevent irreparable injury;

3. the threatened injury outweighs the harm that the order would cause to the non-movant; and

4. the order is not adverse to the public interest.

DeYoung v. Owens, 646 F.3d 1319, 1324 (11th Cir. 2011); see also Winter v. Nat. Res. Def. Council, 555 U.S. 7, 20 (2008). District courts within the Eleventh Circuit are applying the standard set forth in Winter. See Madera v. Detzner, Case No. 1:18-cv-152-MW/GRJ, 325 F. Supp. 3d 1269, 1278 (N.D. Fla. Sept. 10, 2018) (citing Winter as the governing standard for a preliminary injunction). A preliminary injunction is "not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000).

> The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies. A showing of irreparable harm is the *sine qua non* of injunctive relief. The injury must be neither remote nor speculative, but actual and imminent. An injury is 'irreparable' only if it cannot be undone through monetary remedies. The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

Northeastern Florida Chapter of Ass'n of General Contractors v. Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990) (internal citations and quotations omitted).

Typically, the individual or entity from whom the injunctive relief is sought must be a party to the underlying action. See In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Laboratories, 72 F.3d 842, 842 (11th Cir. 1995); see Fed. R. Civ. P. 65(d) (stating that a preliminary injunction or temporary restraining order is binding on "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)").

Because the BOP is not a party to the underlying action, Pribyl's motion for a restraining order should be DENIED.

## VI.   Conclusion and Recommendation

It is respectfully recommended that Defendant's Motion to Dismiss, ECF No. 69, be **DENIED**. It is also recommended that:

1.   The Fifth Amendment and Eighth Amendment claims PROCEED against Defendants Arnold, Williams, Pritt, and Coil, in their individual and official capacities, for creating an unconstitutional condition of confinement

resulting in a serious deprivation of basic human needs and for deliberate indifference to Pribyl's serious medical needs.

     2.    The RLUIPA and First Amendment retaliation claims PROCEED against Defendant Arnold, in his individual and official capacities.

     3.    Pribyl's claims for habeas relief be DISMISSED pursuant to <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).

     4.    Pribyl's requests for criminal prosecution against all Defendants be DISMISSED for lack of standing.

     5.    Pribyl's motion for injunctive relief against the BOP be DENIED because it is not a party to the instant action.

     6.    All remaining claims should be DISMISSED as improperly pled; and the remaining Defendants should be terminated.

     7.    Defendants Williams, Pritt, and Coil should be served with Pribyl's second amended complaint, which requires a response.

     IN CHAMBERS at Tallahassee, Florida, on April 30, 2021.

                    **s/ Martin A. Fitzpatrick**
                    **MARTIN A. FITZPATRICK**
                    **UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

     Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may

respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. <u>See</u> 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).